J-S33016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TEQUILA HELEN JONES, | |
| Appellant | No. 1054 WDA 2015 |

Appeal from the Judgment of Sentence of May 14, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013357-2014

BEFORE:  GANTMAN, P.J., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:              **FILED NOVEMBER 07, 2016**

Appellant, Tequila Helen Jones, appeals from the judgment of sentence entered on May 14, 2015, as made final by the denial of a post-sentence motion on June 10, 2015, following her bench trial conviction for receiving stolen property,[1] possessing a firearm without a license,[2] and three motor vehicle summary offenses.[3]  Upon review, we affirm Appellant's judgment of sentence for possessing a firearm without a license; we vacate Appellant's judgment of sentence for receiving stolen property and remand for retrial on that charge.

---

[1]  18 Pa.C.S.A. § 3925.

[2]  18 Pa.C.S.A. § 6106(a).

[3]  Appellant does not challenge her summary offense convictions on appeal.

*Former Justice specially assigned to the Superior Court.

The trial court summarized the facts of this case as follows:

At trial, Homestead Police Officer James Wintruba testified that on September 20, 2014, at approximately 2:00 a.m., he observed a vehicle traveling which he described as suspicious in nature. Officer Wintruba recognized the car as belonging to Appellant, and believed that Appellant did not possess a valid license and that the vehicle she drove was not registered or insured. He passed the vehicle and observed the driver, Appellant, whom he recognized as the owner of the vehicle. The [o]fficer ran the [license] plate as he passed the vehicle and it came back cancelled for insurance reasons. Before he was able to initiate a traffic stop, he was called away to another matter. Officer Wintruba testified that he observed the same vehicle later that evening, and attempted to initiate a traffic stop. Appellant's vehicle continued for three blocks before stopping. The [o]fficer observed Appellant, now in the passenger seat, and an unknown male in the driver's seat (later identified as Frank Key[e]s). The [o]fficer observed Appellant turning left and right, disappearing behind the seat and then reappearing. Officer Wintruba suspected Appellant had placed something on the rear floor.

Upon the [o]fficer's approach to the vehicle, Appellant continued to move frantically. The driver, Keyes, appeared to be intoxicated. Keyes' eyes were squinted, his movements were lethargic and he reeked of alcohol. Corporal Jeff Luptak arrived as backup shortly after the traffic stop and took an observation point while Appellant searched her glove box for the registration. While Officer Wintruba was speaking with Keyes, Corporal Luptak shouted, "Gun, gun. There is a gun in the car." Appellant and Keyes were quickly removed from the vehicle. Officer Wintruba observed a small black semiautomatic weapon on the passenger seat toward the center of the vehicle, the area from which Appellant was removed. Officer Wintruba later clarified that the gun was recovered from the area under Appellant's left thigh. Neither Appellant nor Keyes had a valid license to carry a firearm. Officer Wintruba testified that the gun was owned by Patrick Schmidt who had reported it as stolen. One fingerprint was recovered on the gun but it did not match Appellant or Keyes. Appellant

- 2 -

made several statements at the scene that she was unaware of and quite surprised by the presence of a gun in the car. Keyes stated he switched places with Appellant because he felt she was too drunk to drive him home.

Corporal Luptak testified that when he arrived at the scene, he did not initially observe the firearm. He testified that he was at the passenger side window when he saw the handgun under Appellant's leg as Appellant moved around inside the vehicle. Corporal Luptak testified that he saw the gun on the passenger seat with the barrel facing the driver's side. He alerted the other [o]fficer and removed Appellant from the vehicle.

Schmidt testified that he bought a 9mm caliber Kel-Tee pistol with a serial number S2526 at a gun show in January 2014. Schmidt identified the gun that was recovered from Appellant's car as the same weapon he purchased at the gun show. He testified that the gun had been stolen from him and that he had not given Appellant or Keyes permission to possess the firearm.

Trial Court Opinion, 1/15/2016, at 3-4 (record citations omitted).

The trial court held a bench trial on May 14, 2015. At its conclusion, the trial court convicted Appellant of the aforementioned crimes. Appellant waived her right to the preparation of a pre-sentence investigation report and proceeded directly to sentencing. The trial court sentenced Appellant to three years of probation for possession of a firearm (with the first year electronically monitored) and a concurrent term of three years' probation for receiving stolen property. The summary offenses resulted in a fine, but no further penalties. This timely appeal resulted.[4]

_____

[4] Appellant filed a post-sentence motion *nunc pro tunc* on June 3, 2015, arguing the convictions were against the weight of the evidence presented.
*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issue for our review:

    I.    Were the verdicts of guilty for receiving stolen property and possession of a firearm without a license [] rendered against the weight of the evidence presented?

Appellant's Brief at 4.

Appellant claims that her convictions for receiving stolen property and possessing a firearm without a license were against the weight of the evidence presented by the Commonwealth. Appellant claims, "the testifying officers stated [Appellant] was highly intoxicated [and] seemed shocked when told there was a gun present." *Id.* at 11. Appellant further avers that

*(Footnote Continued)* ───────────────

The trial court expressly accepted the late filing, but denied relief on the merits by order entered on June 10, 2015. *See Commonwealth v. Dreves*, 839 A.2d 1122, 1128 (Pa. Super. 2003) (If the trial court expressly grants *nunc pro tunc* post-sentence relief, the time for filing an appeal is tolled). On July 10, 2015, Appellant filed a notice of appeal. By order filed on July 16, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After the grant of an extension to obtain the necessary trial transcripts, Appellant complied timely on September 22, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 15, 2016. On May 27, 2016, this panel filed a memorandum reversing Appellant's conviction for receiving stolen property, vacating the judgment of sentence for that offense, and affirming her remaining convictions and sentence in all other respects. On July 11, 2016, we granted the Commonwealth's motion for reconsideration. Upon reconsideration, we determined that the trial court conflated Appellant's weight of the evidence claim with a challenge to the sufficiency of the evidence. On August 19, 2016, we remanded the case for the trial court to assess the weight of the evidence as presented at trial in order to allow this Court to review the trial court's exercise of discretion. On October 3, 2016, the trial court issued a supplemental opinion addressing Appellant's weight of the evidence claims. Accordingly, we will again review Appellant's weight claims.

the fingerprint found on the firearm excluded her and that Mr. Keyes "admitted that he sat in the passenger's seat where the gun was found just prior to the traffic stop." *Id.* Appellant claims that the Commonwealth did not prove she exercised conscious dominion over the firearm because "Officer Wintruba specifically testified that the gun was **not** where he saw [Appellant] leaning forward, and was within Mr. Keyes' arm-length." *Id.* at 14 (emphasis in original). Thus, based upon the totality of circumstances, Appellant suggests, "Mr. Keyes placed the gun under her leg immediately following the stop." *Id.* at 18. Although Appellant concedes she had the power to control the firearm, she maintains, under the circumstances established at trial, the determination that she had the intent to exercise control over the weapon was against the weight of the evidence. *Id.* at 16. Finally, Appellant claims that because she did not know the firearm was under her leg, she could not have known it was stolen. *Id.* at 18-19.

Our Supreme Court describes the relevant standard of review as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new

- 5 -

trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

> The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations, quotations, and emphasis omitted).

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015). "Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Commonwealth v. Gibson*, 720 A.2d 473, 480 (Pa. 1998).

Here, the trial court determined that Appellant's convictions for possessing a firearm without a license and receiving stolen property were not against the weight of the evidence as presented by the Commonwealth. We will examine those convictions separately.

"[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license commits a felony of the third degree." 18 Pa.C.S.A. § 6106(a). In order to convict a defendant for carrying a firearm without a license, the Commonwealth must prove: "(a) that the weapon was a firearm, (b) that the firearm was unlicensed, and (c) that where the firearm was concealed on or about the person, it was outside his home or place of business." *Commonwealth v. Parker*, 847 A.2d 745, 750, (Pa. Super. 2004).

Here, the trial court determined that Appellant's firearm conviction under Section 6106(a) was not against the weight of the evidence because the Commonwealth proved she was in actual possession of the recovered gun. The trial court reasoned: (1) Appellant owned the vehicle where police recovered it; (2) the gun was "tucked under [Appellant's] left leg, the butt of the gun facing her right hand, the barrel facing the driver[;]" (3) Appellant "stated to police that the driver had not placed the gun under her leg[;]" (4) she made furtive movements (even after being instructed by police to stop moving), indicating Appellant was either "trying to hide the gun under the seat and failed" or "recovered the gun and placed it under her thigh[; and,]" (5) the driver did not make any furtive movements and there was no evidence he ever had the gun. Trial Court Opinion, 10/3/2016, at 6. The trial court further found that Appellant's later statement that she did not feel the gun underneath her, was "simply not credible." **Id.**

We discern the trial court did not abuse its discretion in ruling on Appellant's weight claim with regard to possessing a firearm without a license. The Commonwealth presented evidence that Appellant was sitting directly on the firearm when police directed her out of the vehicle. To find under the circumstances that Appellant exercised dominion and control over the firearm simply does not shock the conscious of this Court. Moreover, the trial court, acting as the finder of fact in a bench trial, was free to reject Appellant's statements to police, wherein she claimed she was unaware of the presence of the gun. We will not disturb that credibility determination.

- 8 -

Finally, there is no dispute that Appellant did not have a license to carry a firearm. Thus, we conclude Appellant's Section 6106(a) conviction was not against the weight of the evidence and affirm that conviction.

Turning to Appellant's conviction for receiving stolen property, we note that "[a] person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925. We have identified the elements of receiving stolen property as follows: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super. 2015) (*en banc*).

Our "Supreme Court [has] indicated that mere possession of stolen property, without more, is not sufficient circumstantial evidence to support an inference of guilty knowledge." *Id.* at 267, *citing Commonwealth v. Williams*, 362 A.2d 244, 248 n.7 (Pa. 1976). In *Robinson*, this Court determined that a factfinder "may infer guilty knowledge from evidence of recency, [in other words, that the goods were recently stolen,] which in turn may require the appellant to offer an alternative explanation for [her] possession of the stolen item." *Robinson*, 128 A.3d at 267. "It is the Commonwealth's circumstantial evidence of guilty knowledge (recency) that compels the need for an explanation, since in the absence of an explanation

the [factfinder] may infer guilty knowledge beyond a reasonable doubt based upon the Commonwealth's evidence." *Id.* at 267-268. "Even if the accused offers an explanation, the [factfinder] may nevertheless find it unsatisfactory and reach a finding of guilty knowledge based upon the recency of the theft." *Id.* at 268. Moreover, "[e]vidence of the recency of the theft is not the only basis for the inference of guilty knowledge." *Id.* "Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime." *Id.*

In rejecting Appellant's weight claim, with respect to her receiving stolen property conviction, the trial court concluded:

> Here, the Commonwealth offered evidence that the handgun, reported stolen three months earlier, had been recovered under Appellant's left thigh in the passenger seat of her car during a traffic stop that took place after 2[:00] a.m. While recency alone, given the intervening three months, would not be sufficient circumstantial evidence to prove Appellant's guilty knowledge, [the trial court] found that the totality of the circumstances surrounding this case established that Appellant knew the gun was probably stolen. Not only did Appellant fail to offer an explanation for possessing a stolen gun, she denied being aware the gun was under her thigh. In fact, she appeared shocked and surprised when the gun was recovered. [The trial court] found her expression of shock and surprise not

- 10 -

credible given the totality of the evidence. She ignored Corporal Liptak's commands to her not to touch the gun. In addition, [the trial court noted] that, unlike a paper towel or chewing gum wrapper, a handgun is neither soft enough or small enough to sit upon inadvertently without noticing. Also, one would not expect an object with the weight and balance of a handgun to perch unnoticed and immobile on the top left quadrant of a car seat given both the contours of the seat and the movements Appellant was observed making. Her feigned shock is akin to a false explanation of her possession of a stolen gun.

Furthermore, while Appellant did not attempt to flee from the vehicle, Officer Wintruba observed her moving around extensively in the vehicle in a manner which he interpreted to be an effort to place something on the rear floor behind the passenger seat. Her furtive movements, along with the ultimate location (on the passenger seat under her left thigh) and position of the gun (barrel pointing toward the driver and grip toward Appellant) are consistent with Appellant attempting to hide the gun. Particularly given her extensive movement in the seat, including disappearing behind the seat as if trying to put something in (or retrieve something from) the rear floor area behind the passenger seat, [the trial court] did not find credible that Appellant unknowingly sat on a gun someone else left behind on the passenger seat of her car.

Trial Court Opinion, 10/3/2016, at 9.

Upon careful review, we conclude that the trial court abused its discretion in denying relief on Appellant's challenge to the weight of the evidence supporting her receiving stolen property conviction. In this case, Appellant's judgment for receiving stolen property is manifestly unreasonable because the trial court did not apply the law properly. Police recovered the firearm three months after Schmidt reported it stolen. Generally, we have determined that three months does not qualify as recent possession or acquisition under the aforementioned standards. ***See***

- 11 -

*Robinson*, 128 A.3d at 268-269 (collective cases discussing recency in inferring guilty knowledge that property was stolen). Additionally, the Commonwealth did not present circumstantial evidence of Appellant's guilty knowledge. There were no signs the weapon had been altered to indicate it had been stolen, Appellant did not flee, and there was no other evidence connecting Appellant to theft of the firearm. The trial court focused exclusively on Appellant's furtive movements, her position on the firearm, and her renouncement of the weapon to conclude that Appellant had guilty knowledge that the weapon was "probably stolen." The trial court ultimately determined that Appellant "feigned shock," which was "akin to a false explanation of her possession of a stolen gun." Upon review, however, Appellant did not give a false explanation for how she came to possess the firearm; she told police "over and over that the gun wasn't hers." N.T., 5/14/2015, at 47. The trial court concentrated entirely on factors related to Appellant's possession of the firearm at the time police recovered it, rather than on factors related to the acquisition or receipt of a stolen item. Appellant's mere possession is not enough to infer guilty knowledge that the gun was stolen. *Robinson*, 128 A.3d at 268.

We further note Appellant owned the vehicle that was stopped. At trial, Officer Wintraub testified that Appellant acknowledged that her car insurance had been cancelled and the car's registration had been invalidated. N.T., 5/14/2015, at 21. Appellant "was frantically rifling through a stack of papers to produce the vehicle's registration." *Id.* at 46.

As previously noted, Appellant also did not have a license to carry a firearm. Hence, there were other factors at play to explain Appellant's nervous behavior and efforts to distance her from the recovered weapon. Quite simply, although Appellant's furtive movements, body position and repudiation of the firearm demonstrate firearm possession, they do not show Appellant knew or had reason to know the firearm was stolen. Thus, the trial court abused its discretion in rejecting Appellant's challenge to the weight of the evidence offered in support of her conviction under Section 3925 and we are constrained to vacate the judgment of sentence for that offense. Upon remand, the Commonwealth is entitled to a new trial on receiving stolen property.

Judgment of sentence for possessing a firearm without a license affirmed. Judgment of sentence for receiving stolen property vacated. Case remanded for a new trial on receiving stolen property. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2016