**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Steven PARKER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2004.

Filed April 12, 2004.

---

5. In light of the result we reach, we need not address the fourth issue raised by Mother.

Andrew W. Norfleet, Harrisburg, for appellant.

Francis T. Chardo III, Assistant District Attorney, for Commonwealth, appellee.

Before: HUDOCK, STEVENS, and BECK, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal, *nunc pro tunc*, from the judgment of sentence entered by the Court of Common Pleas of Dauphin County following Appellant's conviction on one count of theft by receiving stolen property,[1] two counts of carrying a firearm without a license,[2] and one count of former convict not to possess a firearm.[3] We affirm.

¶ 2 The record reveals that Appellant's convictions stemmed from a September 29, 1996, traffic stop in Harrisburg. N.T. 4/13/98 at 21–22. At approximately 11:30 p.m., Officer Jones observed a car, driven by Appellant, make a right-hand turn on red without stopping at the intersection. N.T. 4/13/98 at 21–22. Officer Jones approached the vehicle and asked Appellant for his license, registration, and insurance verification. N.T. 4/13/98 at 22. Appellant stated that his driver's license was suspended. N.T. 4/13/98 at 22. While Officer Jones was verifying this information, another police officer, Officer Davis, arrived on the scene. N.T. 4/13/98 at 23.

¶ 3 The officers re-approached the vehicle with Officer Jones on the driver's side and Officer Davis on the passenger side. N.T. 4/13/98 at 23. Officer Davis shone a flashlight into the vehicle and observed a handgun protruding out from underneath the passenger seat; approximately 80% of the handgun was visible. N.T. 4/13/98 at 39–42. Officer Jones then removed Appellant from the car, while Officer Davis secured the handgun. N.T. 4/13/98 at 25–26, 30, 39. Officer Jones later learned that the handgun had been reported stolen. N.T. 4/13/98 at 25–26, 30, 39. Officer Davis looked inside the driver's side of the vehicle and discovered a second handgun underneath the driver's seat. N.T. 4/13/98 at 42.

¶ 4 On October 22, 1997, Appellant, who was incarcerated pending trial on the instant matter, was interviewed by special agents from the Bureau of Alcohol, Tobacco, and Firearms and from the Federal Bureau of Investigation on an unrelated matter. N.T. 3/19/98 at 12–13. The interview lasted approximately ten minutes and terminated when Appellant stated that he was represented by counsel. N.T. 3/19/98 at 15–16, 26. On October 24, 1997, the agents were contacted by Appellant's girlfriend, who stated that Appellant wished to advise them that he was not represented by counsel and that he wanted to speak with the agents. N.T. 3/19/98 at 17–18. Later that day, the agents interviewed Appellant who signed a *Miranda*[4] waiver. N.T. 3/19/98 at 19–20. During the interview, which lasted approximately three hours and mostly concerned matters unrelated to the instant proceeding, Appellant stated that the gun recovered from underneath the driver's seat was his gun and that he did not know who owned the firearm found underneath the passenger's seat but they were both .380 caliber guns. N.T. 3/19/98 at 22–24; N.T. 4/13/98 at 74.

¶ 5 On March 19, 1998, the trial court heard, and denied, Appellant's motion to suppress his October 24, 1997 statement. N.T. 3/19/98 at 75–76. Following a jury trial, Appellant was convicted of all charges. Trial Court Opinion 2/6/04 at 3. On May 27, 1998, Appellant was sentenced to a term of 3 to 6 years of incarceration. Trial Court Opinion 2/6/04 at 3. Appellant did not file an appeal. Trial Court Opinion 2/6/04 at 3. On March 24, 2003, follow-

---

1. 18 Pa.C.S. § 3125(a).

2. 18 Pa.C.S. § 6106(a).

3. 18 Pa.C.S. § 6105.

4. *Miranda v. Arizona,* 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).

ing an evidentiary hearing on a PCRA petition filed by Appellant, the trial court reinstated Appellant's appellate rights. Trial Court Opinion 2/6/04 at 3. Appellant filed a timely notice of appeal on April 23, 2003, and, he was then ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Accordingly, Appellant filed his 1925(b) statement, and the trial court subsequently issued its opinion.

¶ 6 On appeal, Appellant argues that the trial court erred in denying his motion to suppress his statements made to the federal agents, that the trial court erred in denying his motion to strike testimony and/or for a new trial,[5] that the evidence was not sufficient to sustain his conviction for carrying a firearm without a license with respect to the gun found on the passenger's side of the car[6] and for theft by receiving stolen property, and Appellant challenges the discretionary aspects of his sentence.

 ¶ 7 Appellant argues that the trial court erred in denying his motion to suppress his statements to the federal agents since his statements were coerced by the federal agents' promises to Appellant of a benefit if he spoke to the agents.[7]

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–79 (1992) (citation omitted).

A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights. The test for determining the voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession.

*Commonwealth v. Jones,* 546 Pa. 161, 170, 683 A.2d 1181, 1189 (1996) (citations omitted). "The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* rights." *Commonwealth v. Bronshtein,* 547 Pa. 460, 464, 691 A.2d 907, 913 (1997) (citation omitted).

---

5. We have reordered the issues in Appellant's brief.

6. Appellant does not challenge his conviction for carrying a firearm without a license with respect to the gun found underneath the driver's seat or for former convict not to possess a firearm.

7. We note that Appellant may also be arguing that he was denied his right to counsel. To the extent that Appellant may be making this argument, we find it to be waived as it was neither raised in his 1925(b) statement, *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), nor raised in the suppression hearing below, *Commonwealth v. Ellis,* 541 Pa. 285, 293 n. 2, 662 A.2d 1043, 1047 n. 2 (1995) (failure to raise issues in a suppression motion constitutes a waiver on appeal); *Commonwealth v. Smith,* 524 Pa. 72, 84, 569 A.2d 337, 343 (1990) (same).

¶ 8 As an initial matter, we note the somewhat peculiar factual circumstances surrounding the instant statement. Here, Appellant was being interviewed by federal agents regarding an unrelated matter. N.T. 3/19/98 at 12–13. The agents had previously advised Appellant that he was the target of a federal investigation and of the possible penalties he could face as a result of the federal charges. N.T. 3/19/98 at 15. The agents stated to Appellant that, with regards to the information supplied to them about the *federal* matter, they would make Appellant's cooperation known to the U.S. Attorney and the sentencing judge. N.T. 3/19/98 at 41. The interview lasted for approximately three hours, approximately five minutes of the interview concerned the incident at issue in the instant appeal. N.T. 3/19/98 at 24.

¶ 9 While Appellant argues that he was improperly induced into making a statement, he has pointed to nothing in support of his argument that a "promise" to make known to *federal* officials that Appellant had cooperated and supplied information regarding a *federal* investigation constituted an improper inducement and coerced Appellant into making certain statements with respect to the unrelated *state* criminal proceedings at issue here.[8] In any event, even if we were to find that the agents had promised to make known Appellant's cooperation to the officials in the instant proceeding, we would still find his statement to be voluntary based upon the ruling made by the Honorable Joseph H. Klein-

felter, President Judge, following the March 19, 1998 suppression hearing and in his well-reasoned 1925(a) opinion.

¶ 10 Appellant claims that the trial court erred in denying his post-sentence motion to strike testimony and/or for a new trial. We note that Appellant's motion to strike testimony and/or for a new trial is not a post-sentence motion as it was filed after Appellant had rested his case and just prior to the scheduled start of closing arguments. N.T. 4/14/98 at 111–114. As such, we conclude that Appellant's motion was a request for a mistrial. "Whether to declare a mistrial is a decision which rests within the sound discretion of the trial court, whose exercise thereof will not be reversed absent an abuse of such discretion." *Commonwealth v. Bonace,* 391 Pa.Super. 602, 608, 571 A.2d 1079, 1082 (Pa.Super.1990).

¶ 11 In his motion, Appellant argued that the Commonwealth had not previously disclosed the existence of an oral inculpatory statement made by Appellant to the owner of the passenger-side gun. The trial court found this issue to be waived because Appellant failed to object to the witness's testimony and instead waited until after both parties rested and the trial court was ready to hear closing arguments to raise the issue. We find that the trial court did not abuse his discretion in denying the motion because it is well settled that failure to raise a contem-

8. Appellant argues that he was told that if he "cooperated and admitted to possession of the firearms, it would be beneficial to him." Brief of Appellant at 18. However, Appellant did not advance this claim at the suppression hearing. In fact, Appellant's testimony at the suppression hearing was similar to that of Agent Endy. Appellant testified that he was told that he was the target of a federal investigation; that he was told that his cooperation would be made known to the U.S. Attorney and sentencing judge; that he was told that cooperation about the federal matter (which related to gang involvement) could result in a substantial reduction in his federal sentence; and that the discussion about the instant charges came up briefly at the end of the interview. N.T. 3/19/98 48–60. Appellant never testified that he was offered any promises and/or inducements with respect to the instant matter.

poraneous objection constitutes a waiver of the claim. *Commonwealth v. Smith,* 414 Pa.Super. 208, 606 A.2d 939 (1992).

¶ 12 Appellant next argues that the evidence was not sufficient to sustain his conviction for theft by receiving stolen property and the one count of carrying a firearm without a license that referred to the passenger-side gun. Our standard of review for sufficiency of the evidence claims is well settled:

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the factfinder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

*Commonwealth v. Coon,* 695 A.2d 794, 797 (Pa.Super.1997) (citations omitted). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed. *Commonwealth v. Marks,* 704 A.2d 1095, 1098 (Pa.Super.1997) *(citing Commonwealth v. Mudrick,* 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986)).

 ¶ 13 In the case at bar, Appellant was convicted of carrying a firearm without a license and theft by receiving stolen property. The crime of carrying a

firearm without a license is set forth in 18 Pa.C.S. § 6106(a), which states:

> Any person who carries a firearm in any vehicle or any person who carries a firearm on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this Chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a). In order to convict a defendant for carrying a firearm without a license, the Commonwealth must prove: "(a) that the weapon was a firearm, (b) that the firearm was unlicensed, and (c) that where the firearm was concealed on or about the person, it was outside his home or place of business."[9] *Commonwealth v. Bavusa,* 750 A.2d 855, 857 (Pa.Super.2000), *affirmed,* 574 Pa. 620, 832 A.2d 1042 (2003) (citations omitted). Here, the Commonwealth argues that Appellant had constructive possession of the firearm.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." *(citation omitted).* We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." *(citation omitted).* To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Thompson,* 779 A.2d 1195, 1199 (2001).

**9.** Here, Appellant does not challenge the fact that the gun at issue was a firearm or that it was unlicensed.

¶ 14 The crime of theft by receiving stolen property is set forth at 18 Pa. C.S. § 3125(a) which states:

A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3125(a). In order to convict a defendant for receiving stolen property, the Commonwealth must prove: "(1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe the property was stolen."[10] *Commonwealth v. Foreman*, 797 A.2d 1005, 1011 (Pa.Super.2002) (*citing Commonwealth v. Matthews*, 429 Pa.Super. 291, 632 A.2d 570, 571 (1993)).

[A] permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing upon an accused's right of due process or his right against self-incrimination, as well as other circumstances, such as the accused's conduct at the time of arrest." *Commonwealth v. Williams*, 468 Pa. 357, 365–366, 362 A.2d 244, 248–249 (1976) (citations omitted). Nonetheless, the mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen. *Commonwealth v. Matthews*, 429 Pa.Super. 291, 632 A.2d 570, 571 (1993). This additional evidence can include the na-

ture of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. *Williams*, 468 Pa. at 366, n. 7, 362 A.2d at 249, n. 7. Further, whether the property has alterations indicative of being stolen can be used to establish guilty knowledge. *Id.* Finally, even if the accused offers an explanation for his possession of stolen property, the trier of fact may consider the possession as unexplained if it deems the explanation unsatisfactory. *Id.*

*Foreman*, 797 A.2d at 1012–1013.

¶ 15 The evidence adduced at trial established that Appellant was the sole occupant of the vehicle at the time of the traffic stop. N.T. 4/13/98 at 22. The car belonged to Appellant's girlfriend and Appellant was familiar with it. N.T. 4/14/98 at 115–16. At the time of the traffic stop, 80% of the passenger-side gun was exposed and was visible to the person sitting in the driver's seat. N.T. 4/13/98 at 39–43. Appellant admitted that the gun hidden under the driver's seat was his, and he carried it at other times, including while he was in his car. N.T. 4/14/98 at 123. Appellant further admitted that he knew that both guns were .380 caliber handguns. N.T. 4/13/98 at 74. Appellant, a formerly convicted felon, also knew that it was illegal for him to obtain a handgun. N.T. 4/14/98 at 123. The sale of handguns are highly regulated and they cannot be easily obtained from legitimate dealers. *See* 18 Pa.C.S. § 6111. The owner of the passenger-side gun testified that his gun had been stolen the previous month and that he lived near the place where Appellant was stopped by the police. N.T. 4/13/98 at 52. The owner further testified that he spoke to Appellant

---

**10.** Here, Appellant does not challenge whether the gun at issue was stolen or whether he was in possession of the gun. Rather, he challenges whether the evidence proved he knew or had reason to know that the gun was stolen.

after the preliminary hearing and asked him why he kept a gun that he knew wasn't his, Appellant replied that he needed that gun for protection. N.T. 4/13/98 at 52. Appellant had previously told the federal agents that he did not know who owned the passenger-side gun. N.T. 4/13/98 at 78.

¶ 16 This evidence was sufficient for the jury to infer both that Appellant had constructive possession of the passenger-side gun and that he either knew or had reason to believe that the passenger-side gun was stolen. Accordingly, we find that Appellant's sufficiency of the evidence claim lacks merit.

¶ 17 Appellant's final claim is a challenge to the discretionary aspects of his sentence. Specifically, Appellant alleges that the trial court erred in sentencing him in the aggravated range. However, as Appellant failed to raise this claim either at sentencing or in a post-sentence motion, we find it be waived. *Commonwealth v. Mann,* 820 A.2d 788, 794 (Pa.Super.2003) (a challenge to the discretionary aspects of a sentence must be raised in a post-sentence motion); *Commonwealth v. Reeves,* 778 A.2d 691, 692 (Pa.Super.2001) (same).

¶ 18 For all of the foregoing reasons, we affirm the trial court's judgment of sentence.

¶ 19 Affirmed.